## ZEUST *v.* STAFFAN.

## STAFFAN *v.* ZEUST.

HUSBAND AND WIFE; MARRIED WOMAN'S SEPARATE ESTATE; DEVISE; LACHES.

1. Real estate purchased with the money of a husband and conveyed to his wife, by his direction, by an ordinary deed of bargain and sale, is not the separate estate of the wife under Secs. 726 and 727, R. S. D. C., and can not be conveyed or devised by her to the exclusion of her heirs at law or of the husband's marital rights.

2. Where real estate is conveyed to a *feme covert*, in fee simple absolute for her sole use and benefit, free from the control and ownership of her husband, she takes the estate in equity as if she were unmarried, and has the right to dispose of it by deed or devise as a *feme sole*, without regard to any rights of her husband, or of her heirs at law.

3. A suit in equity brought by a husband to have the will of certain real estate of his wife's declared invalid, upon the ground that it was purchased with his money and conveyed to her, and was therefore not her statutory separate estate which could be devised by her, *held*, not to be barred by the husband's *laches*, it appearing that the parties had separated ten years before her death, during which time he had a tenancy in the property by curtesy *initiate* only, and that after her death he acquired the interest of certain of her heirs at law and made various unsuccessful efforts to recover the property by proceedings in ejectment before filing his suit in equity.

Nos. 825 and 827. Submitted December 13, 1898. Decided February 8, 1899.

HEARING on an appeal and cross-appeal by the defendant and complainant, from a decree of the Supreme Court of the

District of Columbia, in a suit in equity to have the will of a married woman declared inoperative as to certain real estate, etc. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Calderon Carlisle* and *Mr. Wm. G. Johnson* for the appellant Zeust:

1. Mary Ann Staffan took an equitable separate estate in fee in two-thirds of the lot devisable in equity by her last will and testament. The language of the deed in trust to Miller is to convey to Mary A. Staffan, her heirs and assigns, "in fee simple absolute for her sole use and benefit, free from the control and ownership of her husband and free from all liability for his debts, contracts and obligations." The deed from Miller to Mary A. Staffan, made in pursuance thereof, recites the above quoted provision of the deed to him and conveys the land "for her sole use and benefit, free from the control and ownership of her husband, George Staffan, or any other husband she may hereafter marry, and free from all liability for his debts, contracts and obligations." By these provisions in the deeds there is shown a clear and unequivocal purpose to exclude all power and marital rights of the husband, which are thus effectually and completely extinguished. *Rigler* v. *Cloud,* 2 Harris, 14 Pa. St. 361; *Carroll* v. *Lee,* 3 G. & J. 504. The same doctrine is affirmed in the following cases: *Hutchins* v. *Dixon,* 11 Md. 37; *Wood* v. *Wood,* 83 N. Y. 579; *Prout* v. *Roby,* 15 Wall. 474. Being her equitable separate estate, she is in equity to be treated as a *feme sole* and may devise the same. There is some conflict of decision in the courts as to the power of a married woman to dispose of her equitable separate estate. This conflict is clear cut and irreconcilable. One class of cases holds that the wife has all the powers of disposition that a *feme sole* has except where expressly denied; the other class holds that she has no power of

disposition except such as is expressly granted. The English doctrine affirms the first position. *Taylor* v. *Meads,* 4 DeG., J. & S. 597. See, also, *Cooke* v. *Husbands,* 11 Md. 492; *Jaques* v. *Church,* 17 Johns. 548–578; *Kimm* v. *Weippert,* 46 Mo. 532; *Imlay* v. *Huntington,* 20 Conn. 146; *Dallas* v. *Heard,* 32 Ga. 604; *Leaycraft* v. *Hedden,* 3 Green Ch. 512; *Whitaker* v. *Blair,* 3 J. J. Marsh, 236; *Heath* v. *Van Cott,* 9 Wis. 516. It is not, however, an open question in this jurisdiction, which of these classes of decisions expresses the better rule and ought to be followed. The choice between these conflicting classes of cases has already been made by this court. *Rathbone* v. *Hamilton,* 4 App. D. C. 475.

It being incontrovertible that the wife held an equitable separate estate in the two-thirds of the lot derived under the conveyance from Miller, and it being the settled law of this jurisdiction that in equity she had the right to devise it, and that the "persons on whom the legal estate may devolve" are to be "deemed and treated as trustees for the persons to whom the wife has given the equitable interest," as declared by this court, the part of the decree of the court below in favor of Anna Zuest was not only proper but was the only disposition of the matter legally possible under the circumstances, and should be affirmed.

2. Mary Ann Staffan had a statutory separate estate in the other one-third of the lot. The deed under which both parties claim title to this part of the lot was executed July 10, 1871, more than two years after the approval of the Married Woman's Act of April 10, 1869. At that time Mary A. Staffan was legally competent to purchase the property and to hold and devise the same as a *feme sole.* By the recitals of that deed under which the complainant claims, and by which he is bound, his wife became the purchaser at the sale and paid the purchase money for the land. There is nothing in the records of the title to this portion of the lot to show, or even to furnish the basis for an inference, that this property was acquired by gift or conveyance from him.

There being no conveyance of this portion of the lot from the husband to the wife, either mediately or immediately, he will not be presumed to have provided the consideration. This is not the case of a creditor of an insolvent husband against the wife, and, therefore, no presumption arises that the property was acquired from him.   That presumption applies only in the suit of a creditor against the wife, where from reasons of sound public policy, and because of the great temptation and facility to the perpetration of fraud, the law casts upon the wife the burden of showing what is peculiarly within her knowledge, how she acquired the property, instead of upon the creditor.   *Seitz* v. *Mitchell,* 94 U. S. 580.

3. The complainant is barred of all relief by lapse of time. The claim of the complainant is that, in 1872, twenty-five years before the filing of this bill, his wife wrongfully deserted him; wrongfully took and carried away a large sum of his money; and wrongfully converted to her sole use the income intended for their joint use.

If these assertions be true, and certainly he is bound by them, he had an immediate right to appeal to the courts for redress, and her occupation of the property was, under these conditions, adverse.   At common law, where by the fictions in ejectment the real parties did not appear on the record, husband and wife could maintain ejectment against each other, and he there points out that the fact of coverture does not incapacitate the wife from committing a trespass.   *Merigan* v. *Daly,* 8 Adol. & Ellis (N. S.), 932.   See, also, *McKendry* v. *McKendry,* 131 Pa. St. 24.   But whatever difficulties there may be in proceedings at law, courts of equity were always open and were the peculiarly appropriate tribunals for the settlement of controversies between husband and wife. *Porter* v. *Bank,* 19 Vt. 417; *Higgins* v. *Higgins,* 14 Abb. (N. C.), 13; *Hendricks* v. *Isaacs,* 46 Hun, 237; 2 Lawson's Rts. Rems. and Pr., Sec. 716; *Connel* v. *Buckle,* 2 P. Wms. 243, 244; *Wilson* v. *Wilson,* 36 Cal. 447–454; *May* v. *May,* 9 Neb. 16; Story's Equity Jurisprudence, Sec. 1368.

The position of the complainant here, is that though the wife was admittedly seized in fee of the premises which he claims, her possession thereof was tortious and in violation of his rights, and that she held the same upon an express trust for his benefit, which trust she violated and repudiated in 1872, and continued so to do for the ten years thereafter that she continued in life. Notwithstanding this and his right to sue for redress, he waits until twenty-five years after the alleged violations of the trust and fifteen years after her death before filing this bill. It is respectfully submitted that after such lapse of time the complainant is barred of any relief in a court of equity. *Mackall* v. *Casilear,* 137 U. S. 566; *Hammond* v. *Hopkins,* 143 U. S. 250; *Galliher* v. *Caldwell,* 145 U. S. 363; *Johnson* v. *Mining Co.,* 148 U. S. 360.

*Mr. Franklin H. Mackey* and *Mr. Walter C. Clephane* for the appellant Staffan:

1. Did Mary A. Staffan derive title by gift or conveyance from her husband? The undisputed testimony shows that the consideration for the conveyance to her was paid by her husband. It has always been held in this District that even if a married woman, through a long series of years, has saved money given her by her husband, with which she purchases real estate, taking the title in her own name, this is nevertheless a gift or conveyance from her husband. Much more does this doctrine apply where the husband himself purchases the real estate, and simply directs that the conveyance shall be made to his wife, as an absolute gift. This court recognizes the rule in the cases of *Cammack* v. *Carpenter,* 3 App. D. C. 219; *Rathbone* v. *Hamilton,* 4 App. D. C. 475; *Frey* v. *Allen,* 9 App. D. C. 48.

2. Has George Staffan a right of curtesy in said real estate? The husband's estate by the curtesy will arise in him at the death of his wife, though the limitation to her during her life is for her sole and separate use, exclusive of any interest and control on the part of her husband.

*Cushing* v. *Blake*, 30 N. J. Eq. 696. The language of these deeds in this case gives the wife no greater interest in this property than the Married Woman's Act itself would have given her if the conveyance had been from an entire stranger in the ordinary form. And as the right of the husband to curtesy is declared (*Smith* v. *Smith*, 21 D. C. 292) to exist notwithstanding the act, so it must exist notwithstanding the language of the deeds.

The following authorities are directly in support of this view of the law: *Carter* v. *Dale*, 3 Lea. (Tenn.), 710; *Tremmel* v. *Kleibolt*, 75 Mo. 255; *Frazier* v. *Hightower*, 12 Heisk. (Tenn.), 94; *Ashcraft* v. *Little et al.*, 4 Ired. Eq. 236; *Soltan* v. *Soltan*, 93 Mo. 307; *Cushing* v. *Blake*, 30 N. J. Eq. 689; *Cushing* v. *Blake*, 30 N. J. Eq. 697; *Tremmel* v. *Kleibolt*, 75 Mo. 255; *Morgan* v. *Morgan*, 5 Maddock's Ch. 248, 250.

3. Was it competent for the wife, Mary A. Staffan, to devise said real estate? If the property thus acquired from the husband was her common law estate, then her devise, not being assented to by the husband, is inoperative so far as this real estate is concerned. *Rathbone* v. *Hamilton*, 4 App. D. C. 475; *Cammack* v. *Carpenter*, 3 App. D. C. 219. These cases show conclusively that this property, being derived by gift from the husband, could not be construed to be her separate estate under the statute. Is the estate, then, such an equitable separate estate of the wife as to give her the power to devise it in equity? The answer to this question is to be found in the language of the court in *Rathbone* v. *Hamilton, supra,* and the decisions already cited. "The purpose must clearly appear beyond any reasonable doubt; otherwise the husband will retain his ordinary legal and marital rights in the property," and in that case it was held that the *jus disponendi* was not given her by the words "unto her, her heirs and assigns, and to and for her and their sole use, benefit, and behoof forever." The words in the Staffan deed are simply "for her sole use and benefit." It is true they are followed by the words,

"free from the control and ownership of her husband and free from all liability for his debts, contracts, and obligations;" but there is nothing in such phraseology that can be taken as "clearly and expressly" giving her the power to *devise* the fee.

All through the cases and text books the distinction is drawn between an equitable separate estate in *personal* property and an equitable separate estate in *real* property. This distinction is clearly shown in *Radford* v. *Carlisle*, 13 W. Va. 572, cited and approved in 3 Pomeroy Eq. Jur. 28, and the conclusion arrived at is "that as to personalty the *jus disponendi* is incident to a separate [equitable] estate; but as to real property, a married woman can not devise it unless a power to do so is reserved by the instrument creating the estate."

In the United States the law may be summarized into certain definite propositions:

.(*a*) As to separate equitable estates in personalty, the rents and profits of land, and perhaps of life estates in land. (1) In some of the States her power to dispose of it is absolute unless restrained by the terms of the instrument creating it. (2) In others her power to dispose of it is controlled by the permissive terms of the instrument creating it, which terms are to be construed strictly.

(*b*) As to separate equitable estates in realty. Generally in all the States any power of disposal claimed for her of the *corpus* or fee must be plainly conferred upon her by the express terms of the instrument supposed to create it, otherwise she does not possess it, and the extent of her powers in this respect is to be strictly construed. See, also, 1 Lead. Cases in Eq. (3d Am. Ed.), 507, 508, 540.

In *Rathbone* v. *Hamilton* this court has indicated that it will adhere, in respect of equitable separate estates in realty, to the rule last stated. The only question, therefore is, do the words of the Staffan deed, strictly construed, give the

power to the wife to devise the estate without the consent of the husband? We have already shown that they do not.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The original bill in this case was filed by George Staffan, praying that the will of his late wife Mary A. Staffan, deceased, so far as the same purports to affect and devise title to Lot No. 15 of Square 583, in the City of Washington, or any part of said lot, might be, by the decree of the court, declared to be inoperative and without effect; and that a certain deed purporting to have been made in pursuance of the authority and direction contained in said will, might be vacated and annulled, and that the title to said Lot 15 be quieted as against Anna Zeust, the defendant in the original bill, and that she be enjoined from asserting title to the real estate described, or any part thereof.

The defendant, Anna Zeust, answered the original bill, denying the existence of any rightful claim of title in the complainant, and setting up and claiming title in herself to the real estate described as derived to her under the will of Mrs. Staffan; and she also filed a cross-bill, praying that the will of Mary A. Staffan be proved and established as the last will and testament of the deceased; that the title to said real estate be decreed to be in her, the said Anna Zeust, and that certain deeds from certain of the heirs at law of said Mary A. Staffan to George Staffan, the complainant in the original bill, be decreed to be void and without effect; that the said George Staffan be enjoined from setting up title to the said real estate, or any part thereof, and that he be required to deliver up possession thereof, and to account for the rents and profits received from the same, etc.

There were many exhibits filed and there was some proof taken to show the circumstances under which certain deeds were made for the property to Mary A. Staffan. There is

not much controversy, however, in regard to the facts of the case. The principal questions involved relate to the nature and character of the estate and title vested in Mary A. Staffan by the deeds of the property made to her by the authority and direction of her husband, and whether his marital rights in the property were excluded by operation of said deeds to the wife. These questions are largely dependent upon the terms of the deeds themselves, without reference to extrinsic facts.

It appears that on April 1, 1867, George Staffan, the original complainant, was seized in fee of Lot No. 15, in Square No. 583, in the city of Washington, said lot having a frontage of fifty feet. That on that date he sold and conveyed to one Elizabeth Taylor, in fee, for the sum of $1,000, the middle one-third of said lot, the said one-third having a frontage of 16⅔ feet by the depth of the lot. In this deed to Elizabeth Taylor, Staffan's wife joined. Of the purchase money only $100 was paid in cash, and the balance was secured by a deed of trust on the property so conveyed. Subsequently, Elizabeth Taylor having made default in the payment of the balance of the purchase money, Staffan, to whom the money was due, directed the trustees in the deed of trust to make sale of the property, and the sale was accordingly made. It is not shown, except by the recitals in the deed made by the trustees to the wife, Mary A. Staffan, who bid off the property; but the deed recites that the property was put up at public auction, and that it was sold to Mary A. Staffan, the wife, at and for $600, she being the highest and best bidder therefor, and had complied with the terms of sale. It is alleged, however, and proved by Staffan, the complainant, that he bid in the property and paid the price bid therefor with the debt due him from Elizabeth Taylor, and that his wife had no means of her own whatever; but that he directed the trustees to make the deed to his wife, Mary A. Staffan, instead of making it to himself; and the deed was so made, July 1, 1871, and

was by him accepted as payment and cancelation of
the debt due him from Elizabeth Taylor.

After the sale and deed to Elizabeth Taylor of the one-
third of the lot—that is to say, on April 10, 1869—Staffan,
his wife joining in the deed, conveyed the remaining two-
thirds of the lot to one W. H. Ward, in trust for his said
wife, Mary A. Staffan, for life, free from the control and
ownership of her said husband, and upon the further trust,
to sell and convey the same, either absolutely or by way of
mortgage, to such person and for such uses and purposes as
the said Staffan and wife should in writing direct. Subse-
quently, on July 29, 1870, Ward, the trustee, by a deed in
which Staffan and his wife united, conveyed these two-thirds
of the Lot No. 15, together with other real estate, to one
William J. Miller, in trust to secure certain large indebted-
ness of Staffan, with direction to Miller, as trustee, after all
the indebtedness so secured had been paid and satisfied, to
convey said real estate, or the residue not sold under the
trust, to the wife, Mary A. Staffan, *in fee simple absolute, for
her sole use and benefit, free from the control and ownership of
her husband.* The indebtedness was all paid, and on October
30, 1871, Miller, as trustee, conveyed to the said wife, Mary
A. Staffan, the said real estate, as directed by the deed of
trust, and by said deed to the wife, the title was declared to
be *in fee absolute, for her sole use and benefit, free from the con-
trol and ownership* of her husband.

It further appears that in August, 1882, Mary A. Staffan,
the wife, died, having duly made and executed her last will
and testament, bearing date the 19th of July, 1882, with-
out the consent of her husband, as it is alleged; and which
will was executed in form to pass real estate; and by this
will she devised all of her real estate to L. P. Shoemaker and
Albert F. Fox, in trust for Anna L. Staffan, now known as
Anna Zeust, the defendant in the original bill, and com-
plainant in the cross-bill. In accordance with the terms of

the will the trustees, on February 14, 1894, conveyed the entire Lot No. 15 to Anna Zeust in fee simple.

Staffan, the complainant, contends that his wife had no power to devise this real estate, and, acting upon that theory, has, since the death of his wife, secured deeds from certain of the heirs at law of his deceased wife, conveying to him an undivided twenty-nine sixtieths ($\frac{29}{60}$) of said real estate.

When the will was offered for probate in the orphans' court it was resisted by caveat, and upon issues and trial the will was found to be the valid last will and testament of the testatrix, and it was accordingly admitted to probate on March 7, 1890; but such probate did not establish the will as to the real estate devised. Since that time Staffan has brought several successive ejectment suits for the property, but has, for one reason or another, failed in their prosecution.

It is an undisputed fact in the case, that of the marriage of Staffan and his wife, Mary A., two children were born alive, but both of whom died in infancy.

The court below, by its decree, declared the will of the wife, Mary A. Staffan, to be ineffective to pass any title to the middle one-third of Lot No. 15, hereinbefore described, but that the title thereto descended to the heirs at law of Mary A. Staffan, subject to an estate by the curtesy in the surviving husband, George Staffan; and that all the title of the heirs of Mary A. Staffan, who had previously conveyed to George Staffan, had been properly vested in him. And as to the remaining two-thirds of said Lot No. 15, the court decreed the title thereto to be in Anna Zeust in fee simple, by virtue of the will of Mary A. Staffan, which was decreed to be sufficiently executed and proved to pass real estate, and that the deed of Shoemaker and Fox, the trustees appointed by the will, was a good and sufficient execution of the power.

From this decree cross-appeals were taken by the parties— each party appealing from that portion of the decree which was adverse to his or her contention.

On the part of the appellant, George Staffan, it is contended that the court below erred in declaring the will of Mary A. Staffan valid and operative to pass title to any part of the real estate involved in the present controversy; and that there was error in holding and decreeing that the whole of said real estate did not vest in the proportions of an undivided twenty-nine sixtieths in George Staffan, by virtue of deeds from certain heirs at law of Mary A. Staffan, and the remaining thirty-one sixtieths in those heirs at law of Mary A. Staffan who have not conveyed to the said George Staffan, subject to the right of curtesy of George Staffan therein. We do not understand that there is any question or dispute in regard to the number of heirs at law left by Mary A. Staffan.

On the part of Anna Zeust, the defendant in the original bill and complainant in the cross-bill, it is contended that the court below erred in decreeing that George Staffan was entitled to any part of said Lot No. 15, and in not decreeing that the title to the whole of said lot was in Anna Zeust. That the court erred in not denying all the relief prayed by the original bill; and in not granting all the relief prayed by the cross-bill. And to be more specific in the contention urged by her, she contends that the legal effect of the conveyances to Mary A. Staffan was to vest in her an equitable separate estate in fee in the two-thirds of the Lot No. 15, which, in equity, she could validly devise by her will; and as to the other or middle third of the lot, the effect was to vest in her a statutory separate estate in fee, which, either in equity or at law, she could validly devise by her will. And further, that even if Staffan ever had any right to any part of the lot, he is, and was at the time of the institution of this suit, barred by lapse of time from asserting such right.

On the state of facts presented, there are three main questions, the answers to which would seem to solve and determine the rights of the parties to this litigation. These are—

First. Whether Mary A. Staffan, as wife, derived title to

the property, or any part thereof, by gift or conveyance from her husband?

Second. Whether George Staffan, the husband, had a right to an estate by the curtesy in the land conveyed to the wife, or in any part thereof?

Third. Whether Mary A. Staffan, the wife, had the right of disposal by will of the property deeded to her, or any part thereof, to the exclusion of her heirs at law, and of the marital rights of her husband, George Staffan?

1. We shall first examine and determine the question as to the effect and operation of the deed of William H. and William A. Ward, trustees, to the wife, Mary A. Staffan, dated July 1, 1871, for the parcel or part of the Lot No. 15, sold under deed of trust from Elizabeth Taylor. This deed to the wife, as we have seen, did not convey the property to her sole and separate use, free of the right and control of her husband. It was simply a deed of bargain and sale, and conveyed the estate in fee, by the ordinary terms of limitation of that estate. It was acquired *as her general estate.* The question is, whether it was derived from her husband? If it was not, but was purchased by her and paid for with her own separate means, then she acquired the property in a way *other than by gift or conveyance* from her husband, and she held it absolutely as her own general property, "as if she were unmarried," and in no wise subject to the disposal of her husband; and so holding it she was entitled to convey or devise it in the same manner and with like effect as if she were unmarried. This is the explicit provision of the Act of Congress of April 10, 1869, in force when the deed was made. Sections 726, 727, R. S. D. C. But, on the other hand, if this parcel of the lot was purchased by and with the money of the husband, and the deed was made to the wife by his authority and direction, then the property was acquired by the gift or conveyance from the husband, and therefore would not be property acquired under the statute; and, consequently, she could not convey or devise it as *if*

she were *feme sole.* In such case the wife would acquire the property as at common law, subject to her common law disabilities in the control and disposition of the property. She would have no power to devise the property to the exclusion of her heirs at law, or of the husband's marital rights. By the first section of the Act of 1869, Ch. 23, conferring the right and power upon married women to acquire and hold property to the exclusion of the husband, it is expressly provided that the property so acquired by her, "she may convey, devise or bequeath *the same,* or any interest therein in the same manner and with like effect as if she were unmarried." In the revision of the statutes relating to the District of Columbia, the provision of the Act of 1869, just recited, is made a separate but a connected section, with some very slight changes in the phraseology employed. But no such change of terms as would indicate an intention to change or depart from the sense and meaning of the provision as we have it in the original act. *Kaiser* v. *Stickney,* 131 U. S. Appen. 187; *Cammack* v. *Carpenter,* 3 App. D. C. 219; *Rathbone* v. *Hamilton,* 4 App. D. C. 475, 484–5.

Now, in this case it is not shown or pretended that the wife had any independent or separate means with which to purchase the property. On the contrary, the proof is that she had no such means. And Staffan, the surviving husband, swears that he purchased the property with his own means and directed the deed to be made to his wife. All the probabilities of the case would seem strongly to support this statement as the real truth of the transaction. The property sold to Elizabeth Taylor belonged to Staffan, the husband, and the balance of the purchase money for which the deed of trust was given was due to him; and it is fair and reasonable to assume, in accordance with his statement, that his debt was canceled and discharged by the purchase in of the property. His direction to the trustees to make the deed to his wife would seem to be but a part of a general scheme of his to have all his real estate conveyed to

and vested in the name of his wife.    What his purpose was in so doing is not so clearly disclosed.

Holding the property under this deed of the trustees, as her *general property*, not acquired under the statute, but by the gift of the husband, the wife had no power of disposition thereof by devise, and consequently her will is inoperative and without effect as to this part of Lot No. 15. And it follows that, upon the death of Mrs. Staffan, the fee simple estate in this particular part of the lot descended to her heirs at law, subject to an estate by the curtesy in the surviving husband.   By the deeds from a part of the heirs of the deceased wife, a part of the estate that devolved upon the heirs has become vested in Staffan, the surviving husband.   This was, it seems, the conclusion reached by the learned justice below, on this part of the case, and that conclusion is embodied in the third clause of the decree.   We entirely concur in that conclusion.

2.  We shall next examine the deeds of Ward, trustee, and of Miller, trustee; the first, of date July 29, 1870, and the second of date October 30, 1871, for the other two-thirds of Lot No. 15,—the latter of which deeds was made under power and authority contained in the first of said deeds, to Mrs. Mary A. Staffan,—and determine the question of the nature and extent of the estate thereby vested in Mrs. Staffan, the wife.

In the first of these deeds, that of Ward, the trustee, and of Staffan and wife, to Miller, trustee, containing the power of conveyance, after the payment of the debts provided for, the power was, as we have already stated, to convey to the said Mary A. Staffan, her heirs and assigns, *in fee simple absolute, for her sole use and benefit, free from the control and ownership of her husband,* etc.   In the deed by Miller, trustee, to Mrs. Staffan, made in pursuance of this power, the exact terms of the power were followed in the limitation of the estate, and of the sole and separate use thereof, to the exclusion of all control and ownership of the husband.

That this conferred an equitable separate estate upon the wife, we can hardly think is open to question at this day. Indeed, the authorities would all seem to be in accord in hold-' ing that such limitation and declaration of separate and exclusive use and benefit in the wife, create an equitable sole and separate use and estate in her, in respect of which she is entitled to be regarded and treated by a court of equity as a *feme sole*; and that, too, notwithstanding there is no trustee expressly nominated by the instrument conveying the estate. Technical terms are not necessary to declare the separate estate. If terms be employed to make clear the intention to create such an estate, nothing more is required. And it makes no difference whether the separate estate be derived from the husband himself, or from a mere stranger; for, as to such separate estate, when obtained in either way, and there be no trustee named, the husband will be treated as a mere trustee, and prohibited from disposing of the estate to the prejudice of the wife. 2 Sto. Eq. Jur. Secs. 1380, 1381. As to what language or terms will be regarded as sufficient to declare the separate use or estate, may be seen in the many examples furnished by Mr. Justice Story, in Secs. 1382 of his Eq. Jur. (2d Vol.), where the cases are largely collected. It is unnecessary to make special reference to those cases.

3. The next question, and the one made most prominent in the argument at bar, is, Whether Mrs. Staffan, the wife, had power of disposition by devise of this separate estate, as if she were *feme sole*? there being no special power of disposition mentioned in the deed.

It may be conceded, as is doubtless the case, that there is some diversity of decision in the courts of this country upon this subject. There are cases where the separate estate has been declared, and yet the courts have held that there was no *jus disponendi* in the wife, unless the power be expressly given by the instrument creating the estate. There are several such cases cited by the counsel for the complainant

Staffan. But those decisions follow the reasoning and distinctions of Chancellor Kent, in his very able and learned opinion delivered in the case of the *Trustees of the Methodist Episcopal Church* v. *Jaques*, 3 John. Ch. 77, in which the learned chancellor held that a *feme covert*, with respect to her separate property, should be considered as a *feme sole, to the extent only* of the power given her by the deed of settlement; and that her power of disposition is not absolute, but *sub modo*, to be exercised according to the mode prescribed in the deed or will under which she became entitled to the property; and therefore, if she has power of appointment by will, she can not appoint by deed; and that "instead of maintaining that she has an absolute power of disposition, unless specially restrained by the instrument, the converse of the proposition is the more correct rule, that she has no power but what is specially given, and to be exercised only in the mode prescribed, if any such there be. Her incapacity is general; and the exception is to be taken strictly, and to be shown in every case, because it is against the general policy and immemorial doctrine of the law." This was the conclusion of Chancellor Kent, as stated in his own words, in that celebrated case. It is but just, however, to Chancellor Kent to say that he did not pretend that his conclusion was supported even by the preponderance of authority of that day. On the contrary, he expressly admitted, that "the weight of book authority, and especially of the writers who have treated on this branch of the law, was against his conclusion;" and that, to use his words, "they seem to hold that there must be an *express restriction* upon alienation, either absolutely, or in some other mode than the one mentioned, or the wife will not be bound."

As is well known, that case was taken into the Court of Errors of the State of New York, where it underwent a most thorough discussion, both at the bar and by the court, and the decree of the chancellor was radically reversed. 17 John. 548. It was held that a *feme covert* in respect to her sepa-

rate estate is to be regarded in a court of equity as a *feme sole*, and that her power of disposal *is absolute*, except as it may be restrained by *negative* words in the instrument conveying the estate.

In the opinion of Chief Justice Spencer, delivered in the Court of Errors, that learned jurist said: "I have examined this case with the unfeigned respect which I always feel for the learned chancellor, who has denied the right of Mrs. Jaques to dispose of her estate, without the consent or concurrence of her trustees; and I am compelled to dissent from his opinion and conclusion. From the year 1740 until 1793 (with the single exception of the opinion of Lord Bathurst in *Hume* v. *Tenant*, which occurred in 1778, and in which case a rehearing was granted by Lord Thurlow, and the opinion reversed), there is an unbroken current of decisions that a *feme covert*, with respect to her separate estate, is to be regarded in a court of equity as a *feme sole*, and may dispose of her property without the consent or concurrence of her trustees, unless she is specially restrained by the instrument under which she acquired her separate estate. There are nearly twenty cases decided by Lord Hardwicke and Lord Thurlow containing the principles I have stated, and which I shall not weary the patience of the court by citing." The learned justice then refers to the cases, the first of which occurred in 1793, which appear to have broken in upon the long established rule, but which were in turn overthrown and the former rule recognized by Lord Eldon, in the case of *Parkes* v. *White*, 11 Ves. 209, decided in 1805.

Some of the State courts, as we have already said, have upheld the doctrine of Chancellor Kent, as expounded by him in the case of the *Church* v. *Jaques*, rather than that of the Court of Errors. But it is clear, we think, that the great weight of authority of the present day is in favor of the doctrine of the Court of Errors in that case. In Maryland, where the chancery system that prevailed in England

at the time of our Revolution has been adopted, and which has been adopted in this District, the principle of the English decisions upon this subject has been followed. In the leading case of *Cooke* v. *Husbands*, 11 Md. 492, decided by the Court of Appeals of that State, where the will was silent as to any particular mode of disposition, except that it was required to be by writing, it was held that a *feme covert*, in respect to her separate estate, was to be treated as a *feme sole*, and where the instrument creating the estate contains no limitation or special mode of disposition, she may dispose of it as a *feme sole*, upon the principle that the *jus disponendi* accompanies the property, as a legal incident of ownership. This, with a slight modification, not material to the present case, is the principle laid down by the Court of Errors in the case of the *Methodist Church* v. *Jaques*.

In the more recent English cases the principle of the *jus disponendi* is maintained with great liberality and completeness. Where the estate is conveyed to the *feme covert*, as in the present case, in fee simple absolute, for her sole and separate use and benefit, free from the *control or ownership* of her husband, she takes the estate as if she were unmarried, and has the right to dispose of it as an unmarried woman, without regard to any rights of her husband, or of her heirs at law. In the case of *Taylor* v. *Meads*, 4 D. J. S. 597, 607, Lord Chancellor Westbury, in speaking of a limitation of this character to a wife, says: "The estate given to Elizabeth Meads, a married woman, is one and entire, being the equitable estate in fee, with a declaration, the effect of which is, that her husband shall have no interest in the estate so devised, nor shall the wife be under any disability with respect to such estate by reason of her existing coverture, but shall have the same right of enjoyment and disposition as if she were a single and not a married woman." And Lord Chancellor Hatherley, in the case of *Pride* v. *Bubb*, L. R. 7 Ch. App. 64, in speaking of the principle of the separate estate as settled in the English Chan-

cery, said: "It can not, I apprehend, be now disputed that when a married woman is the owner of real estate to her separate use, she is to all intents and purposes in the position of a *feme sole*, so as to be able to dispose of that estate by will or deed."

And in the case of *Cooper* v. *MacDonald*, L. R., 7 Ch. Div. 288, and on appeal, 299, many of the facts were quite analogous to those of the present case. In that case a married woman, under the limitation of a will made in 1846, was an equitable tenant in tail to her separate use in certain freehold estates. By a clause in the same will she was restrained from alienation of the rents and profits. The husband became bankrupt, and after his order of discharge, joined with his wife in barring the equitable entail and limiting the estate in fee to the separate use of the wife. The wife died, having by her will devised the estate for the benefit of her children, and the husband's assignee claimed the husband's estate by curtesy. And it was held by the Master of the Rolls, Sir George Jessel, and affirmed on appeal, that the restraint on anticipation did not prevent the wife from barring the entail and acquiring the equitable fee; and that the wife, having thereby acquired an equitable fee to her separate use, had power to defeat her husband's right to curtesy by devising the estate.

The case was very fully considered by the Master of the Rolls, and in the course of his opinion he said: "A gift of a fee simple estate, or a gift of a capital sum of money, to the separate use of a married woman gives her the same power of alienation over it as if she were a single woman. She is entitled to dispose of it as if she were not a married woman at all, and that at once gets rid of any notion of the husband having an interest. Whatever interest he would have had in the absence of disposition is got rid of by the disposition.

"The separate use is a creature of equity, and equity says the estate may be so limited to the married woman as that she can get rid of every possible interest of the husband.

That is the meaning of a limitation to her separate use and free from his interference or control. It is exactly the same for this purpose as if the estate had been limited to such uses as the married woman shall by deed or will appoint; it entirely destroys the notion of the husband having any interest in it as against her disposition."

This decision of the Master of the Rolls was unanimously affirmed by the Court of Appeals, on appeal by the assignee of the bankrupt husband.

It is conceded in this case by the counsel for Staffan, the surviving husband, that a *feme covert* with separate estate in personalty, or in rents and profits of realty, has full power of disposition as if she were *feme sole*, unless restrained by express terms of the instrument creating the estate. But why make such a distinction? Why should there be a power of disposition of rents and profits, and not of the real estate that produces such rents and profits? Manifestly, there is no good reason for the distinction, whatever may have been said in certain cases, and by a few text writers. On the contrary, every reason would seem to dictate the propriety of maintaining the principle of the power of disposition of the equitable separate estate, both real and personal, strictly in analogy to the power of disposal now almost universally conferred by statute upon married women with respect to their legal estate. Where there is no restraint imposed upon the power of disposition, the reason upon which the power is based applies to all kinds of property and nature of estates alike. We entertain no doubt of the existence of the power of disposition by devise in Mrs. Staffan, by virtue of her separate estate in the two-third parcels of Lot 15; and that her will was and is valid and operative to pass the two-third parcels in said lot; and, consequently, the devise of those parts of said lot to the trustees named in the will is good and valid to pass the estate to said trustees and their deed to Anna Zeust is a valid execution of the power contained in the will.

It is contended on the part of Anna Zeust, the complainant in the cross-bill, that even though the will of Mary A. Staffan was void and without effect as to any part of the estate devised thereby, or as to the middle third part of Lot No. 15, conveyed to Mary A. Staffan by the Wards, as trustees, yet, by the great lapse of time that intervened from the date of the separation of the complainant and his wife to the time of the filing of the original bill in this case, the complainant has forfeited his right to relief at the hands of a court of equity. It is alleged and shown that this separation took place in 1872, and that the wife died in 1882. It is true, a considerable time was allowed to elapse before bringing the present suit; but the surviving husband had, between the year 1890 and the the time of filing the present bill, brought repeated actions of ejectment to recover the property, but failed for some cause in their prosecution. We do not, however, think that, under the circumstances of the case, the complainant Staffan ought to be denied all redress as to the middle third of Lot No. 15, because of the lapse of time that has been allowed to occur.

During the life of the wife the property was in her possession, and she received the rents and profits therefrom, if there were any to be received. As to the one-third of the Lot 15, the husband, during that time, had the interest only of a tenant by the curtesy *initiate*, and he could only have recovered the possession of the property to himself by joining the wife as plaintiff.

It is true that for injuries to the *possession or reversion* of land held in right of the wife, an action of trespass or on the case may be maintained by the husband without the joinder of the wife. *Clapp* v. *Stoughton*, 10 Pick. 463, 469; *Allen* v. *Kingsbury*, 16 Pick. 235, 240; *Jackson* v. *Hopkins*, 19 Wend. 339. But, in an action to recover the land itself, and where it is necessary to exhibit and rely upon the title in the wife, the wife must be joined with the husband. 1 Chitt. Pl. (16th Ed.), 84. It is urged, however, that a bill

in equity could have been brought by the husband against the wife in the lifetime of the wife, and by the husband and the heirs at law of the deceased wife against those claiming under her will since her death. But it is exceedingly doubtful whether a court of equity would have been active in giving the husband a remedy for the recovery of the property as against the wife, under the circumstances of the case. They were living separate and apart, whether by the fault of one more than the other does not appear; nor does it appear that the husband was contributing anything to the support of the wife. In such case, if the husband had filed a bill to recover to himself the property of the wife, her equity would have arisen and been involved, and that equity extends to the rents and profits of the real estate belonging to the wife sought to be recovered by the husband. 2 Sto. Eq. Juris., Sec. 1408; *Sturgis* v. *Champneys*, 5 Myln. & Cr. 97, 101, 103. Nor do we think, under the circumstances of the case, that the time that elapsed from the death of the wife to the filing of the original bill was sufficient to bar the husband of his right by the curtesy, nor of the heirs at law of their right, under whom the surviving husband claims, by virtue of the deeds made to him by such heirs. The claim thus sustained extends only, as we have shown, to the middle one-third of Lot No. 15 of Square No. 583.

Upon review of the whole case, as presented by the original and cross-bill, we are of opinion that the decree of the court below should be affirmed in its entirety; and it is so ordered.

With respect to the costs of these cross-appeals, we think it just and right that each party should pay the one-half of the taxable costs that have accrued on said cross-appeals; and it is so ordered.       *Decree affirmed.*